### FINN vs. FINN.

The defendant having an income of $800 a year, alleged to be from the bounty of his daughters, to whom he had transferred, before his marriage, property of the value, as he alleges, of $142,000, but which transfers appeared to have been made for his own benefit, and the defendant appearing to be as well able to provide for his wife's maintenance as at a former time, when he had proposed a separation, and offered to pay her $1200 a year, and the complainant's income from her separate estate being considered, alimony was allowed, from the time of moving therefor, at the rate of $600 a year, *pendente lite.*

Motion for alimony, *pendente lite.*

*Mr. W. H. Vredenburgh,* for the motion.

*Mr. J. W. Carmichael,* contra.

THE CHANCELLOR.

The complainant having filed her bill for divorce from bed and board, on the ground of extreme cruelty, now asks for alimony, *pendente lite.* The defendant has answered, substantially denying the charges of the bill. Evidence has been taken on both sides, to be used on this motion.

The parties were married in the city of New York, in May, 1868. They appear to have moved in the best society there. The defendant was, at the time of the marriage, apparently possessed of large wealth, and lived in luxury. He had three children, his daughters, by his first wife. The complainant was a widow, and had an estate of about $20,000. She had two unmarried daughters, who were then dependent on her for support. The parties appear to have come to Toms River, in this state, very soon after the marriage. The defendant purchased some land there, on which he built a dwelling-house, and he subsequently bought another lot, on which was a house. He also purchased some cranberry land. The title to the last mentioned property is in his name. The title to the other is either in the name of the complainant, or of one of her daughters, in trust for her. The defendant alleges, that the cranberry land is worth nothing over the amount due on a mortgage for $12,600, and interest, given by him to his daughter, Myraette, upon it, in 1870, for money which, he states, he then borrowed of her. He says he has no property, except this cranberry land. The above mentioned property of the complainant is valued at its cost, $18,000. Of this amount the defendant paid $10,000, and the complainant $8000. The property rents for only about $550 a year. The complainant has no other property, except a debt of $10,000, on bond, without security, the obligor in which has gone into bankruptcy.

In October, 1869, the defendant made a proposition to his wife for a separation, and in it offered to pay her $1200 a year, in equal monthly installments. The offer was repeated in December, 1872. He has forbidden the storekeepers in Toms River to give her credit on his account, and he contributes nothing to her support.

The question is, whether the defendant is able to pay alimony. He insists that he is not. He is about sixty-three years of age, and, except occasional attacks of gout and rheumatism, is in good health. He does not appear to be incapable of doing business. He has an income of $800 a

year, as he alleges, from the bounty of his daughters, Myra-ette and Caroline, who are both living in Europe, and on each of whom, he says, he settled, before his marriage to the complainant, property of about the value of $45,000, and at the same time settled property, (land in Nebraska,) of the value of $52,000, on his other daughter, Catharine. He holds letters of attorney from Myraette and Caroline, by virtue of which he manages the property transferred by him to them, from which his income is derived. That property is all they own.

The proof in the case leads to the conclusion, that these transfers to his daughters were colorable only, and were, in fact, for his own benefit, and made with a view of protecting the property for himself, against the risks and vicissitudes of business. He alleges that he made the transfers to his daugh-ters at or about the same time, and before the marriage. The marriage, as before stated, took place in May, 1868. The deed to his daughter, Catharine, for the property conveyed to her, is dated May 2d, 1867. Among the property so transferred was a valuable factory at Bloomfield, in this state, which he conveyed to Myraette. The character of these transfers is shown by a letter, dated October 11th, 1867, written by him to the complainant, in which he says, speak-ing of his embarrassments in business: "About one year ago I anticipated those results might happen to me. I placed what I considered of the value of $20,000, for the use of M. and C. This amount I thought never to have touched. I have already been compelled to use $5000 of it." In another letter to the complainant, dated October 20th, 1867, he says: "My first object will be to sell my factory at Bloomfield. Owing to the dull times I may not be able to do this just now. It is a good and valuable factory. But this kind of property, unlike houses and stores, has but few purchasers. Could I find a ready sale for this, and at one-half its cost, I should be well satisfied. It would relieve me at once of em-barrassment, and enable me to have money to operate with. All I desire now is, to provide a moderate competency to

Finn v. Finn.

support the children in the country, where they could live cheaply." This language is not in accord with his allegation that his transfers to his daughters were advancements, wholly to their use, and without any reservation for his own benefit, and that they were made at a time when he had still left, after these advances to his daughters, (which he says amounted, in the aggregate, to about $142,000,) property of the value of $60,000, for himself. On the 17th of November, 1868, he paid the water rent, $112.50, on the Bloomfield factory, on a bill in which it was charged to him; and when, afterwards, " four or five years ago," the property was burned, he received the insurance money, $20,000, on the policies, all of which were in his name. This money, he says, was invested on mortgage, in the name of Myraette. The money which he says he borrowed of her, and spent in improving the cranberry land was the proceeds of stock transfered by him to her. There seems to be reason to believe that the settlements which he claims to have made upon his daughters, were for his own benefit. I am not satisfied that he is not as well able to pay for his wife's separate maintenance now, as he was in 1872. There will be an order that he pay the complainant alimony, (to run from the time of making this motion,) at the rate of $600 a year, during this suit, in equal monthly installments. In fixing this amount, I have taken into consideration the income which the complainant may be reasonably expected to derive from her separate estate, and have been governed by the considerations which necessarily influence the court in fixing the amount of alimony to be paid, while as yet the merits of the controversy are undetermined.